IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-03495-SKC-TPO

FETCHLIGHT, INC.,

    Plaintiff,

v.

AFS COMPANIES, LLC, *et al.*,

    Defendants.

---

**ORDER GRANTING IN PART PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER (DKT. 9)**

---

    This dispute centers on whether Defendants AFS Companies, LLC, and David J. Kertz are infringing Plaintiff FetchLight, Inc.'s, licensed trademarks, importing and selling counterfeit goods, unfairly competing, and tortiously interfering with Plaintiff's business relations. At issue are Defendants' actions importing and selling Surron® branded electric motorcycles, which Plaintiff states are unauthorized because Plaintiff is the exclusive United States distributor of Surron electric motorcycles which are manufactured in China by Chongqing Qiulong Technology Co., Ltd. under the Surron® brand name.

1

Plaintiff filed its Verified Complaint (Complaint) on December 18, 2024. Dkt. 1.[1] The Complaint seeks injunctive relief and damages resulting from Defendants' alleged violations of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, for trademark infringement, counterfeiting, false designation of origin, and cybersquatting (Counts 1, 2, and 6); the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.* (Count 3); state unfair competition law (Count 4); and state law concerning tortious interference with contractual and business relations (Count 5).

That same day, Plaintiff also filed its Motion for Temporary Restraining Order (Motion) seeking entry of a temporary restraining order (TRO) and preliminary injunction. Dkt. 9. As explained below, the Court finds entry of a TRO is appropriate relative to Plaintiff's claim of trademark infringement, and therefore the Motion is granted in part and denied in part, as explained below. It further takes under advisement the Motion's request for entry of a preliminary injunction.

### A. TRO STANDARD

Federal Rule of Civil Procedure 65(b) governs review of Plaintiff's request for a TRO. The Court may only issue a TRO if:

> (A)   specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

---

[1] The Court uses "Dkt. __" to refer to documents from the CM/ECF electronic docket.

Case No. 1:24-cv-03495-SKC-TPO   Document 12   filed 12/20/24   USDC Colorado
pg 3 of 12

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). Further, "[a] party seeking a temporary restraining order or preliminary injunction must show (1) a substantial likelihood that the movant eventually will prevail on the merits; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest." *SEBO America, LLC v. Euraco Group Ltd.*, No. 19-cv-0540-WJM-NRN, 2019 WL 2578314, at *2 (D. Colo. June 24, 2029) (quoting *NRC Broad. Inc. v. Cool Radio, LLC*, No. 09-cv-02076-REB, 2009 WL 2965279, at *1 (D. Colo. Sept. 14, 2009)).

"In essence, a TRO 'is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction and may be issued with or without notice to the adverse party.'" *Bikinvention 2 CC v. Squirt, LLC*, No. 14-cv-01178-CMA-MEH, 2014 WL 1758142, at *2 (D. Colo. May 2, 2014) (quoting Charles Alan Wright, *et al.*, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed. Apr. 2014 update)). "Moreover, while '[t]he issuance of a temporary restraining order is a matter that lies within the discretion of the district court,' a party must demonstrate 'irreparable injury' as 'an essential prerequisite to a temporary restraining order.'" *Id.* (quoting Charles Alan Wright, *et al.*, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed. Apr. 2014 update)).

## B. FACTUAL BACKGROUND

The Complaint was verified by Walt Lifsey, Chief Executive Officer of Plaintiff. Dkt. 1, p.27. And Plaintiff's attorney certified the efforts made to provide notice of the Motion, Complaint, and all other documents filed in this case to Defendants by emailing them to Defendants' counsel and by physically serving them on Defendants. Dkt. 9, p.34. Mr. Lifsey's verification and Plaintiff's attorney's certification satisfy the requirements of Rule 65(b)(1). So the question now is whether Plaintiff has met its burden to establish the requisites for a TRO.

In considering the allegations of the Verified Complaint, unless the allegations are "facially unlikely or absurd," the Court must accept the allegations as true for purposes of analyzing the Motion because the allegations have yet to be denied. *Edmisten v. Werholtz*, 287 F. App'x 728, 732 (10th Cir. 2008) (citations omitted). Plaintiff alleges it "is the exclusive United States distributor of electric motorcycles manufactured in China by Chongqing Qiulong Technology Co., Ltd. under the Surron® brand."[2] Dkt. 1, ¶5; *see also id.* at ¶18. Surron further appointed Plaintiff "as Surron's exclusive trademark licensee in the U.S. The [agreements] grant[ ] to [Plaintiff] the exclusive right and license, even as to Surron, to use the [Surron Trademarks] in the U.S., and further grants [Plaintiff] the right to enforce the [Surron Trademarks] against trademark infringement in the U.S., including but not

---

[2] The Court refers to Chongqing Qiulong Technology Co., Ltd. as "Surron," as Plaintiff does.

4

limited to the filing of lawsuits against third parties in [Plaintiff]'s own name." *Id.* at ¶19. Plaintiff "has the exclusive right (indeed, the obligation) to build and maintain an effective dealer network in the United States." *Id.* at ¶20.

The Surron Trademarks, which are federally registered, include several word marks and design marks set forth in the Verified Complaint, including the "Surron" word mark, variations on "Surron," and variations of "Ultra Bee" and "Hyper Bee." *Id.* at ¶15. (The word marks and design marks comprising the Surron Trademarks are depicted on Exhibit A to this Order and incorporated herein.) "[T]he products and services offered by [Plaintiff] and its authorized dealer network under the [Surron] Trademarks have been met with widespread public approval and have established demand and goodwill among consumers throughout the United States." *Id.* at ¶22.

Defendants are not authorized dealers of Surron in the United States. *Id.* at ¶23. And yet, they sell counterfeit Surron motorcycles in part through their website www.surron.us.com (the "Website"). *Id.* "[D]ue to the tremendous amount of trademark infringement of the [Surron] Trademarks throughout the Website, as well as all of the false advertising and statements made on the Website, consumers are falsely led to believe that Defendants are authorized distributors selling genuine Surron® electric motorcycles." *Id.* at ¶25. Plaintiff also provided pictures of Defendants' motorcycles showing Defendants' heavy use of Plaintiff's trademarks.

Defendants' motorcycles "advertised, promoted, sold, and continuing to be sold by Defendants have material differences as compared to those electric motorcycles

5

distributed by [Plaintiff] in the U.S. pursuant to its agreements with Surron. As a result, the electric motorcycles being sold by Defendants are counterfeit notwithstanding their manufacture by Surron (the 'Counterfeit Products')." *Id.* at ¶27. "Among other things, the Counterfeit Products (i) are not made for sale in the U.S. as an off-road vehicle and are equipped with on-road components, [ ] (ii) are not covered by the warranty applicable to Surron® electric motorcycles sold in the U.S., (iii) do not confirm [sic] to the Surron's Vehicle Identification Number structure that identifies as an off-road vehicle which requires the letter 'S' as the fourth digit; and (iv) otherwise do not comply with U.S. regulations." *Id.* at ¶28. Because they are equipped with on-road components, "the counterfeit electric motorcycles do not comply with the U.S. regulations applicable to on-road motorcycles, [and] are prohibited from importation under 49 U.S.C. § 30112(a)(1), the National Traffic and Motor Vehicle Safety Act . . . , and are subject to the regulations administered by the National Highway Traffic Safety Administration (NHTSA)." *Id.* at ¶3.

Further, Defendants "have also falsely represented to resellers and potential dealers that they are capable of appointing other authorized dealers—but neither [Defendants] Kertz nor AFS have any such authorization." *Id.* at ¶29. Defendants' representations have led to at least two businesses contacting Defendants about becoming an authorized Surron dealer, one of whom purchased motorcycles from Defendant Kertz; the other, based on its suspicions being raised, contacted Surron in China, who informed it Surron "was *not* affiliated with [t]he Website and reiterated

6

that [Plaintiff] is the only company that has the right and ability to establish authorized dealers of genuine Surron® products for sale in the United States." *Id.* at ¶45; *see also id.* at ¶¶39-45, 54-57; Dkt. 9-1, ¶¶8-11, 13-19.

### C. ANALYSIS

The Court finds Plaintiff has met its burden concerning its Lanham Act claim for trademark infringement sufficient for the entry of a TRO.[3] First, on the record before it, Plaintiff is likely to succeed on the merits of its claim for trademark infringement.

> In order to establish trademark infringement, a plaintiff must prove the validity of the mark it seeks to protect and must also prove that the use of a similar mark by defendant is likely to cause confusion in the market place concerning the source of the different products. Confusion occurs when consumers make an incorrect mental association between the involved commercial products or their producers or when a mark is likely to deceive purchasers or users as to the source, endorsement, affiliation, or sponsorship of a product. Courts look at six, non-exhaustive factors to determine whether there is a likelihood of confusion:
>
> (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.

*SEBO*, 2019 WL 2578314, at *2 (cleaned up).

---

[3] Because the Court issues a TRO based on Plaintiff's claim for trademark infringement, it does not analyze Plaintiff's other claims. *See Bikinvention*, 2014 WL 1758142, at *3.

7

According to the Verified Complaint, Plaintiff is the exclusive United States licensee of the Surron Trademarks; Defendants are importing, advertising, and selling Surron motorcycles not intended for sale in the United States; those motorcycles use identical Surron Trademarks without authority from Plaintiff; actual confusion has already occurred; the products are materially similar; the differences (however) are not patently obvious to purchasers; and Plaintiff has created demand for and goodwill in Surron electric motorcycles. On this evidence, Plaintiff has sufficiently demonstrated a substantial likelihood of success on the merits on its trademark infringement claim under the Lanham Act.

Second, Plaintiff has sufficiently alleged irreparable harm in the form of consumer confusion; counterfeit electric motorcycles using the Surron Trademark(s) that are unfit to be sold in the United States because they do not comply with federal regulations; loss of its exclusive right to determine the manner in which the Surron Trademarks are represented to customers and to control the quality of goods using the marks; and loss of goodwill and reputation Plaintiff built in the Surron Tradmarks.

Third, the balance of equities favor Plaintiff. As alleged, Defendants have no right to use the Surron trademark in the United States whereas Plaintiff has that exclusive right, and thus any harm Defendants might suffer is of their own making. And fourth, the public interest also supports the issuance of the TRO because the TRO would prevent electric motorcycles from being sold in the United States that do

8

not meet federal motor vehicle requirements, and because the TRO would support intellectual property rights and the public's interest in fair competition.

\*   \*   \*

For the reasons shared above, the Motion is GRANTED IN PART insofar as it seeks a TRO. But the specific injunctive relief the Motion seeks is too sweeping at this stage. Therefore, it is DENIED IN PART.

The Court **ORDERS** the following:

1. Plaintiff's Motion seeking a TRO is granted in part, denied in part without prejudice, and taken under advisement as to the request for a preliminary injunction;

2. Defendants David Kertz and AFS Companies, LLC, are immediately restrained, enjoined, and prohibited from taking any of the following actions, directly or indirectly, until further order from this Court:

    a. Selling counterfeit Surron electric motorcycles;

    b. Advertising using the Surron Trademarks as referenced above and on Exhibit A attached hereto;

    c. Soliciting customers to be dealers of Surron goods; and

    d. Holding themselves out as affiliated with Surron or FetchLight, Inc. in any way;

3. The foregoing shall be in effect immediately and, pursuant to Fed. R. Civ. P. 65(b)(2), this Order shall expire on January 3, 2025, absent either

good cause shown for why the order should be extended or consent by Defendants to extend the order;

4. Pursuant to Fed. R. Civ. P. 65(c), Plaintiff shall post a bond or cash deposit with the Clerk of Court in the amount of $2,500.00 as security on or before December 23, 2024;

5. Plaintiff SHALL TRANSMIT a copy of this Order to each Defendant by any means (including multiple means, if appropriate) reasonably calculated to reach each Defendant promptly, and Plaintiff must then promptly file a certificate of service explaining how it transmitted this Order and whether it has reason to believe that this Order was received by each Defendant;

6. Plaintiff SHALL FILE executed returns of service for each Defendant no later than December 27, 2024; and

7. Each Defendant SHALL FILE a response (either separately or combined) to that portion of the Motion seeking a preliminary injunction **no later than December 30, 2024.** Defendants are on notice that the Court may consider issuing a preliminary injunction based upon any of Plaintiff's arguments put forth in the Motion. After the Defendants file a response (or responses), the Court will determine whether a reply brief from Plaintiff is necessary. In the meantime, no reply brief is permitted

absent leave of the Court. The Court will set a hearing after its receipt of Defendants' response(s).

Dated: December 20, 2024.

BY THE COURT:

_____
S. Kato Crews
United States District Judge

11

**EXHIBIT A**



SURRON

ULTRA BEE





HYPER BEE

